We therefore find that no error has intervened in this case, and accordingly the finding and judgment of the court below will be, and the same hereby are, affirmed.

*Judgment affirmed.*

MONTGOMERY and SHERICK, JJ., concur.

INDUSTRIAL COMMISSION OF OHIO *v.* FORTHMAN.

(Decided November 13, 1934.)

*Mr. John W. Bricker,* attorney general, *Mr. R. R. Zurmehly* and *Mr. Raymond J. Kunkel,* for plaintiff in error.

*Mr. Harold M. Baron* and *Mr. Henry J. Weller,* for defendant in error.

Ross, J. This is a proceeding in error from the Court of Common Pleas of Hamilton county, wherein judgment was entered giving the plaintiff, Carrie Forthman, the right to participate in the State Insurance Fund. The Industrial Commission now prosecutes error to this court to reverse such judgment.

It is the contention of the plaintiff in error that there was no proof of the cause of the injury, or that any injury which resulted in the death of the deceased husband of the claimant was received during the course of and by reason of his employment, and, therefore, that the motion for an instructed verdict in favor of the commission should have been granted, in accordance with the ruling of the Supreme Court of Ohio in *Industrial Commission* v. *Davis,* 119 Ohio St., 221, 162 N. E., 796.

It is claimed by the defendant in error that the deceased was a foreman in a foundry; that during the course of his employment he scratched a finger, and that it became infected later, causing his death. There is evidence that members of his family noticed the in-

jury, and a daughter stated that there was a black substance imbedded in the flesh resembling "core", but she added "I couldn't tell." Statements of the deceased to his wife and other members of the family were properly excluded as lacking that spontaneity required by the decisions of our Supreme Court. *Weaver* v. *Industrial Commission,* 125 Ohio St., 465, 181 N. E., 894; *Coutellier* v. *Industrial Commission,* 126 Ohio St., 546, 186 N. E., 400; *Industrial Commission* v. *Bartholome,* 128 Ohio St., 13, 190 N. E., 193. However, in this latter case, we find that the Supreme Court of this state has definitely concluded that the application filed with the commission is "evidence", the same being a public record. We quote from pages 22, 23 and 24 of the opinion:

"We are likewise not unmindful of the case of *Coutellier* v. *Industrial Commision,* 126 Ohio St., 546, 186 N. E., 400. It was therein held that 'declarations of a decedent made to his physician or others, narrating the cause which is claimed to have contributed to his death, are self-serving and inadmissible, unless they are made under such circumstances as to cause them to be a part of the *res gestae.'*

"This is good law. It has withstood the assaults of time, but it must be borne in mind that in the case before us we are dealing with something more than the declarations of a deceased person. The first sentence of the second proposition of the syllabus in the *Coutellier case* reads as follows:

" 'A report or application blank furnished by the Industrial Commission, which the Commission requires to be filled out and signed by the applicant, his physician and employer, is admissible evidence.'

"Judge Jones, who wrote the opinion, in his reasoning says: 'This application was upon a printed form furnished by the commission and was required to be signed by the applicant, the attending physician and

the employer. No doubt its purpose was to secure adequate knowledge of the nature and character of the injury and how it was sustained.'

"In other words, the applicant in signing the application was complying with a requirement of the Industrial Commission, made as much for its own benefit as for the benefit of the claimant. That it was a routine matter made in the course and conduct of a business, became a public record, and these facts sufficiently vouched for its genuineness and made it admissible in evidence against the Industrial Commission.

"Section 1465-40, General Code, provides that the Industrial Commission shall be in continuous session and open for the transaction of business during all the business hours of each and every day except Sunday and legal holidays. 'All proceedings of the board shall be shown on its record of proceedings, *which shall be a public record* and shall contain a record of each case considered, and the award made with respect thereto * * *.'

"Section 1465-44, General Code, provides as follows:

"'The board shall adopt reasonable and proper rules to govern its procedure, regulate and provide for the kind and character of notices, and the services thereof, in cases of accident and injury to employes, the nature and extent of the proofs and evidence, and the method of taking and furnishing the same, to establish the rights to benefits of compensation from the state insurance fund, hereinafter provided for, the forms of application of those claiming to be entitled to benefits or compensation therefrom, the method of making investigations, physical examinations and inspections, and prescribe the time within which adjudications and awards shall be made.'

"Section 1465-47a, General Code, provides that the commission may at any time designate and appoint

referees to conduct hearings, rehearings and investigations, with the same powers as members of the commission in connection with such hearings, rehearings and investigations, with authority to administer oaths, take testimony, take depositions, require the attendance of witnesses and the production of documents, and, when required by law or the commission, claimant or employer, he shall submit to the commission a complete transcript of the hearing, with a report setting forth his findings of fact and conclusions of law.

"In these grants of statutory authority we find that the Industrial Commission is required to keep a record of each case. That such file is a public record. Being a public record, we have a right to assume that it will be preserved and perpetuated. The Industrial Commission can make rules as to the nature and extent of proofs, methods of investigation, etc.

"We must conclude that the Industrial Commission arranged all the machinery, under its statutory power, for the taking of Bartholome's testimony; that it was taken by one of the commission's referees; that the commission was represented at such hearing by counsel, who cross-examined Bartholome; that a transcript of the hearing, containing Bartholome's testimony, was made by the referee and delivered to the commission; that a record has been or will be made from the files and transcript of the case, and such file will be a public file which will be preserved and perpetuated."

Upon reference to the file or transcript of the proceedings before the commission, we find the application states:

"(A) Deceased was employed at the time of injury causing death by The John B. Morris Fdy. Co. Address Court & Harriet.

"(B) Deceased received an injury while in the course of employment on the 19th day of July, 1928.

"(C) Said injury consisted of Skin Bruises of third finger of the right hand.

"(D) Said injury resulted in the death of deceased on the 31st day of July, 1928."

In the "First Notice", also a part of the transcript, we find:

"1. Name of deceased person.....Wm. Forthman Who resided at 2277 Wolf St., Westwood, Cincinnati, Ohio. Whose average weekly wages at time of accident including cost of meals, lodging, etc., furnished by Employer in addition to cash was $43.50. Sex.... Male. Single, maried, Widowed or divorced....Married. Age....70 years. Nationality....German Born. Speak English....Yes. Number of dependents.... wife. Occupation of deceased at time of injury.... Foreman. Job or product working on when injured ....

"2. Name of Employer....J. B. Morris Foundry Co. Office Address....Court & Harriet, Cincinnati, O. Nature of Business....Foundry Jobbing.

"3. Date of Accident....July 19th, 1928. Hour of day....M.

"4. Exact location of place where accident happened....Foundry.

"5. How did Accident Happen?....

"6. State fully nature of injury which caused death of deceased. Pneumonia superinduced by infection of third (3rd) finger right hand.

"7. Did infection set in and cause death? Yes.

"8. Give Date of Death....July 31, 1928. Hour of day....5:55 A. M. Christ Hospital, Cincinnati, O.

"9. Name of Attending Physician....Drs. Shank & Fullerton. Address....North Bend Rd. & Harrison Ave., Cinti, Ohio.

"10. Name of Undertaker....Treadway Brothers. Address....Norwood, Ohio.

"11. Did the deceased have anyone dependent upon him for support, either wholly, or partially? Wife.

"12. Give names and present address of dependents....Mrs. Carrie Forthman, 2277 Wolf St., Westwood, Cincinnati, Ohio.

"Carrie Forthman
"(Signature of Claimant.)"

"Certificate of Employer.

"The person first above named was, on the date shown herein, an employee of the undersigned.

"The John B. Morris Foundry Co.,
"(Name of Employer.)
"(Signed by) George McG Morris, Pres.

"Manual 3081,
"Risk No. 3799."

Upon reference to the bill of exceptions, we find no objection on the part of the commission to the statements contained in these files and records of the commission, introduced by the defendant in error in the trial below. There was no effort made to show that these statements were based upon hearsay testimony. The commission introduced no evidence. That such course could have been pursued is made plain by the Supreme Court in *Coutellier* v. *Industrial Commission, supra,* at page 549 of the opinion:

"We are of the opinion that the report or application blank required to be filled out by the applicant and signed by the general manager was competent. The printed form signed by the latter contains a certificate reading as follows: 'I have read all the statements contained herein and know the same to be true and correct,' etc. This application was upon a printed form furnished by the commission and was required to be signed by the applicant, the attending physician

and the employer. No doubt its purpose was to secure adequate knowledge of the nature and character of the injury and how it was sustained. While we think the printed certificate furnished by the commission and signed by the manager was admissible in evidence, such certificate attesting the truth of the statements or declarations of the applicant pertaining to the cause of the injury would be of no evidentiary value if it were proven to the jury that the manager's certificate pertaining to the cause of the injury was based solely upon self-serving declarations contained in the application; and the jury should be instructed to ignore the certificate of the employer if such a situation is developed on the trial.''

We, therefore, conclude that there was presented to the jury competent evidence showing that the deceased incurred the injury resulting in his death by reason of and during his employment. The motion for an instructed verdict was properly overruled.

*Judgment affirmed.*

HAMILTON, P. J., and CUSHING, J., concur.